**In re PEER MANOR BLDG. CORPORATION.**

**WITTER v. NIKOLAS et al.**

**No. 8098.**

Circuit Court of Appeals, Seventh Circuit. March 26, 1943.

Rehearing Denied April 19, 1943.

Harold J. Green, of Chicago, Ill., for appellant.

Harry G. Hershenson, Geo. E. Q. Johnson, Wm. B. Basile, and Robert G. Sippel, all of Chicago, Ill., for appellees.

Before EVANS, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

On June 18, 1934, the Peer Manor Building Corporation, a corporation organized and existing under the laws of the State of Illinois, was dissolved by suit of the State in a State court of equity. The law of Illinois provides that the dissolution of a corporation " * * * shall not take away or impair any remedy available to or against such corporation, * * * or any liability incurred, prior to such dissolution if suit or other proceeding thereon is com-menced within two years after the date of such dissolution." Smith-Hurd Annotated Statutes, Chapter 32, Section 157.94 (1941).

On July 23, 1936, more than two years after its dissolution, the said corporation filed a petition for its own reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The District Court took jurisdiction of the petition and approved a plan of reorganization by its order of December 2, 1936, in which order the Peer Manor Building Corporation was referred to and treated as an existing corporation. The plan provided for an extension of the debtor's bonded indebtedness to November 28, 1941, and for the necessary steps to be taken to consummate the plan.

On August 27, 1937, the District Court entered its final decree in which it decreed that the plan had been fully executed, the acts of the parties were approved, the debtor was discharged from all of its debts, claims and liabilities existing at the date of its approval therein, except as provided in the plan, and the creditors, claimants and stockholders were enjoined from interfering with the plan. The decree concluded with this paragraph: "That this proceeding is hereby finally terminated and closed with the exception that this court reserves jurisdiction over this cause during the period of extension for the purpose of entering such further orders, directions and decrees, as may hereafter be deemed necessary or proper in connection with carrying out the provisions of the said Plan of Reorganization, as amended."

Apparently, the parties knew nothing about the dissolution decree of June 18, 1934, as nothing appears in the record up to this point suggesting such fact. The final decree of the District Court incorporated in its body the agreement of the debtor made with the indenture trustee, by the terms of which agreement it was provided that upon default of the debtor corporation under the extension agreement, a certain plan of reorganization might be carried into effect. The debtor was in default at and after the expiration of the period of extension, which expiration date was November 28, 1941, and the debtor's creditors and the indenture trustee on December 5, 1941, filed in the old proceeding, in which the final decree had been entered on August 27, 1937, a petition alleging the default and grounds for reorganization, and set forth a plan to form a new corporation to issue its stock for the out-

standing bonds of the debtor, the old stockholders of the debtor to receive nothing. This plan was alleged to have the approval of 57% of the outstanding mortgage bondholders. The petition also alleged the pendency, in the Superior Court of Cook County, Illinois, of a suit brought by one Witter, the owner of a $500 bond, for partial foreclosure of the mortgage given to secure the bonded indebtedness. The petition concluded with a prayer for service of the petition and a subpoena upon the debtor, for approval of the petition, and for proceedings under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq.

Witter answered the petition, and among other things alleged the fact of the dissolution of the debtor corporation. A firm of attorneys purported to appear for the dissolved corporation more than seven years after its dissolution, filed an answer to the petition and set up the corporation's dissolution. The District Court took jurisdiction, and appointed a trustee. The court ordered the trustee to take possession of the property and to operate the same, and to submit his recommendations; and the court stayed the proceedings of Witter in the State court to foreclose, and reserved jurisdiction. At the hearing, the creditor Witter offered in evidence a certified copy of the decree of dissolution of the debtor corporation. The court refused to admit it in evidence.

The creditor Witter appeals. He contends the court had no jurisdiction of the petition filed July 23, 1936, since the corporation had been dissolved for more than two years at that time, and its property had passed to its stockholders, and he alleged secondly that even if the proceedings under the petition filed July 23, 1936, were valid, they terminated with the final decree of August 27, 1937, and the proceedings under the petition of December 5, 1941 to attempt a second reorganization is a new proceeding and must fail because the debtor had been dissolved at that time for more than seven years, and service could not be had upon it, and there was no corporation to be reorganized.

Whatever may be the validity of the first contention of the appellant Witter, it seems to us his second contention is valid. The decree of August 27, 1937, purported to be final in all respects, and reserved jurisdiction only for the period of the extension of the indebtedness; and this reservation of jurisdiction was only for the purpose of supervising the procedure to carry out the court's decree. It reserved no jurisdiction to entertain a further reorganization proceeding. True, the agreement of extension entered into with the indenture trustee and made a part of the decree of August 27, 1937, provided a plan that was to be put into effect if the debtor should default, but that plan is not the one sought to be promulgated and approved. An entirely new and different proceeding is contemplated. The petition of December 5, 1941, was a new proceeding and not a continuation of the proceeding instituted July 23, 1936.

The fact of the alleged debtor corporation's existence became very material. Jurisdiction of this new proceeding had to be worked out by having first an entity that could be sued, and second a corporation found to be in existence, since only corporations can be reorganized under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq.

As to the first essential element, the having of an entity that could be sued, the corporation having been dissolved for more than seven years prior to the commencement of the proceedings, it was nonexistent and dead for all legal purposes. It could neither sue nor be sued. The service of process upon it was an impossibility. Chicago Title & Trust Co. v. 4136 Wilcox Building Corp., 302 U.S. 120, 58 S.Ct. 125, 82 L.Ed. 147; Reconstruction Finance Corporation v. Teter, 7 Cir., 117 F.2d 716, 725; Sarelas v. McCue & Co., 291 Ill.App. 540, 10 N.E.2d 700; Smith-Hurd Annotated Statutes, Chapter 32, Sec. 157.94 (1941).

The purported appearance and answer of the former corporation by the attorneys were a nullity. The corporation had been dead for seven years, and was incapable of appointing attorneys or exercising any other corporate function. Since the court had no proper party before it and could not subpoena the defunct corporation, it was without jurisdiction to proceed.

For another reason the court was without jurisdiction to proceed, because the second essential element was lacking. It could not proceed under Chapter X of the Bankruptcy Act unless it had before it a corporation, as only corporations can be reorganized under this Chapter. This was a jurisdictional fact that did not exist and could not exist because the alleged debtor corporation was no longer in esse. There was no corporation to be reorganized. The existence or nonexistence of the corpora-

tion was a material inquiry to the court's jurisdiction to proceed. Since the nonexistence of this important jurisdictional fact was set up by Witter in his answer, his offer to prove the dissolution of the corporation on the hearing should have been allowed, and it was error for the court to refuse his offer of proof in this regard.

We therefore hold that since the corporation sought to be reorganized on the petition of the creditors had been dissolved for more than seven years before the filing of the petition herein on December 5, 1941, which fact was properly before the court, the court was without jurisdiction of a party to be reorganized and without jurisdiction of a subject for reorganization.

We do not think a bankruptcy court has a right to ignore the mandate of a State law denying its defunct corporations access to the bankruptcy court, any more than it has a right to ignore the mandate of a State law which denies a deceased person's representative access to the bankruptcy court. Harris v. Zion Savings Bank and Trust Co., 317 U.S. 447, 63 S.Ct. 354, 87 L.Ed. ——. The superior right of a State to control should be respected in both instances. The State of Illinois has the power of life and death over its corporations. It says the corporation is dead. We know of no rule of bankruptcy which has the power of resurrection.

In Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corporation, 302 U.S. 120, 58 S.Ct. 125, 82 L.Ed. 147, the Supreme Court reversed this Court, and held that an Illinois corporation which had been dissolved for more than two years could not file a petition for its own reorganization under Section 77B. In that case the Supreme Court said at page 129 of 302 U.S., at page 129 of 58 S.Ct.: "The only power left to the corporation when this proceeding was brought was to finish pending cases begun within two years after its dissolution. With that exception, its corporate powers were ended for all time and for all purposes. It was without authority * * * to adopt resolutions authorizing proceedings under section 77B, or to bring a proceeding to effectuate a reorganization under that section."

The Supreme Court did not have before it the precise question we have in this case, or that we decided in In Re 211 East Dela-

ware Place Building Corporation, 7 Cir., 76 F.2d 834. In the Wilcox Bldg. Corporation case the Supreme Court decided only that the corporation itself could not, more than two years after its dissolution, bring a proceeding under Section 77B for its own reorganization. The Court refrained from expressing an opinion as to whether creditors could bring such a proceeding more than two years after the corporation had been dissolved. We had held in In Re 211 East Delaware Place Building Corporation, supra, that even though a corporation had been dissolved for more than two years, it would be deemed to be still in existence for the purpose of sustaining the right of the creditors to proceed with a petition for reorganization.

If, as the Supreme Court said in the Wilcox Bldg. Corporation case, the corporation more than two years after dissolution has no power except to finish pending cases begun within two years of dissolution, and with this exception the corporation is ended for all time and for all purposes, then it could not exist for the purpose of being sued or to carry out the reorganization proceedings that might be approved and adopted in any pretended suit that might be brought for that purpose. The positive implications of law in the Wilcox Bldg. Corporation case are at war with our holding in the In Re 211 East Delaware Place Building Corporation case. It was thought in the latter case that since all the creditors and all the stockholders were before the court, the proceeding was not vulnerable.[1] Even if all the parties who could have had any interest were before the court, the court still did not have a corporation before it for reorganization, which was essential under Section 77B. It would likewise be essential under Chapter X of the present Bankruptcy Act. To the extent that the In Re 211 East Delaware Place Building Corporation case is in conflict with our holdings here, it is overruled.

Insofar as In Re Park Beach Hotel Building Corp., 7 Cir., 96 F.2d 886, decides that a petition in bankruptcy for reorganization of an Illinois corporation can be initiated by creditors more than two years after the corporation has been dissolved, the same is overruled.

It is suggested that the appellant Witter is estopped to deny the existence of the

---

[1] See In Re 211 East Delaware Place Building Corporation, D.C., 14 F.Supp. 96, at page 98.

Peer Manor Building Corporation because he participated in the first proceeding to reorganize and accepted the fruits of that proceeding. There is no intimation that the appellant knew at that time that the corporation had been dissolved, or did anything to induce the corporation or the creditors to change their position in reliance upon the appellant's action. The appellant made no representation upon which anyone relied. The acts the appellant committed, which it is suggested estop him to deny the corporation's existence, were acts committed also by the petitioning creditors, the appellees. The appellant did nothing that the appellees did not do. Under those circumstances, there could be no estoppel in any event. 19 American Jurisprudence, Section 42, page 643. Certainly one creditor could not deal with a dissolved corporation in such a manner as to bring it back to life so another creditor might proceed against it. There was no estoppel here.

The decree of the District Court is reversed, with instructions to dismiss the petition for lack of jurisdiction.

KERNER, Circuit Judge, concurs in the result.

EVANS, Circuit Judge (dissenting in part).

I can not agree that creditors of an Illinois corporation, which has been dissolved for failure to pay its franchise tax, may not file an involuntary petition in bankruptcy against said debtor. I believe the holding in Re 211 East Delaware Place Bldg. Corporation, 7 Cir., 76 F.2d 834, should be followed, not overruled.

Whether an Illinois corporation which has been dissolved, because its officers failed to keep it alive, by refusing to pay the Illinois franchise tax, may file a voluntary petition in bankruptcy after a decree of dissolution, presents, I must admit, a question of doubt and uncertainty.

The right of creditors to file an involuntary petition against such an Illinois corporation also presents a question where judgment is somewhat suspended, although the right of creditors to invoke the jurisdiction of the bankruptcy court in such a case seems to me stronger than the right of the debtor itself to file a voluntary petition.

The uncertainties arise from a reading of the decision in Chicago Title & Trust Co. v. Forty-one Thirty-Six Wilcox Bldg. Corporation, 302 U.S. 120, 58 S.Ct. 125, 82 L.Ed. 147, where the question was presented and considered. There, the majority, three judges dissenting, held that such a corporation could not file a voluntary petition. None of the judges who sat in that case and voted with the majority, save one, is at present, a member of the Supreme Court. Two of the justices who opposed the holding of the majority and favored the minority view, written by Justice Cardozo, are members of the Court. Six new members of the Court have not passed on the question.

However, the controverted question in this case, namely, the right of creditors to file an involuntary petition, was not decided in that case, although referred to. The majority opinion did recognize that a different question was presented where the proceedings were involuntary,—the petition being signed by the creditors.

In other words, an involuntary petition against a dissolved corporation might lie, although a voluntary petition by the dissolved corporation would fall.

I think neither question is finally settled by that decision (302 U.S. 124, 58 S.Ct. 125, 82 L.Ed. 147). In view of the change in personnel of the Supreme Court, it is not finally settled that the dissolved debtor corporation may not file a voluntary petition in bankruptcy. Surely, there is nothing in that opinion to justify our overruling the decision in Re 211 East Delaware Place Building Corporation, 7 Cir., 76 F.2d 834, followed by this court in Park Beach Hotel Bldg. Corp., 7 Cir., 96 F. 2d 886, which recognized the right of creditors to file an involuntary petition against such a dissolved corporation. In fact, the leaning, if there be any, to be drawn from the majority opinion is favorable to the creditor's right to institute involuntary bankruptcy proceedings against the dissolved debtor corporation.

Strong reasons, it seems to me, support the position of petitioning creditors. They have been stated by the courts of this and other circuits and need not be repeated. Hammond et al. v. Lyon Realty Co., 4 Cir., 59 F.2d 592; In re Double Star Brick Co., D.C., 210 F. 980; In re Munger Vehicle Tire Co., 2 Cir., 159 F. 901; In re Storck Lumber Co., D.C., 114 F. 360.

I dislike the idea of letting insolvent corporations fraudulently promoted (or in good faith created) defeat creditors in their efforts to save something from the wreck, through reorganization under Sec. 77B of the Reorganization Act. The creditors

were unaware of the action of the officers of the corporation which led to the dissolution. As to the creditors, it was just another fraud, worse perhaps than the one practiced on them when they bought the debtor's securities. Unless the Illinois statute finally and completely seals the existence of the corporation by dissolution, the creditors should not be barred. The Illinois statute, as I read it, does not completely terminate the corporation's existence. The corporation is not completely dissolved. It is not wholly dead. It lives for some purposes—to perform some affirmative acts, protective of its creditors. It is a *de facto* corporation so far as creditors' attempting to reach its assets is concerned. Life Ass'n of America v. Fassett, 102 Ill. 315.

It is not so dead as to prevent creditors, seeking to protect their rights under the Reorganization Act, from recognizing it and its estate as the legitimate subject of reorganization. In short, it is a *de facto* corporation for a limited purpose. Nor would I hold, until the Supreme Court has been given the opportunity to pass on it, that it was so dead it could not (by voluntary proceedings) invoke the jurisdiction of the Federal Court to protect all creditors through its reorganization. In other words, it is not stone dead even though so immovable and paralyzed as to prevent activity along the lines for which it was organized.